## EDWARD BURKE et al. vs. MECHANICS' SAVINGS BANK et als.

A. had houses built on land belonging to her infant children, A. being entitled to dower in the land. A. subsequently was appointed guardian of the children. She afterwards petitioned the General Assembly of Rhode Island for permission to mortgage these lots of her wards to pay for the houses built on them, and the General Assembly passed a resolution authorizing the Court of Probate to give her leave to execute as guardian a mortgage of her wards' land for such amount as the court should find needful to defray the expense of building the houses, and on such conditions as the court should prescribe. Pursuant to this resolution, and by permission of the Court of Probate, A. executed a mortgage of the land containing the usual power of sale, and after condition broken the mortgagee sold the land under the power.

The infant children came of age and filed a bill in equity to set aside the mortgage and all proceedings under it, and to remove the cloud on their title caused by the mortgage and the sale:

*Held*, that the resolution of the General Assembly was unconstitutional and void because it effected a transfer of the infants' estate by special legislation without compensation to them and without due process of law.

*Held*, further, that the interposition of the Probate Court did not cure the invalidity of the resolution; the court not acting judicially but performing the work of a legislative committee.

*Held*, further, that the infants being under no legal obligation to pay for the houses, the legislature could not create such an obligation and impose it on them.

Distinction between the resolution in question and Betterment Laws so called.

*Query*, whether retrospective Betterment Laws are valid.

BILL IN EQUITY to remove a cloud on the complainants' title and for an injunction.

*February* 21, 1880. DURFEE, C. J. This is a bill to enjoin an action at law and remove a cloud. The facts are these: Edward Burke died in 1863, intestate, leaving two infant children, Edward and Ellen, and a widow, Ellen Burke by name, their mother. He died seised of three lots of land, situated in the city of Providence, which descended to his two children subject to the mother's right of dower. About a year afterwards the mother married one James Golding. Two of the lots, which descended to the children were unimproved, and the mother requested or allowed Patrick McEvey, her brother, to erect, or furnish the money and credit for the erection of a dwelling-house on them, on an understanding with her that the lots should be mortgaged for his reimbursement. At the time this occurred she had not been appointed the guardian of her children and had no power to enter into any engagements for them. Subsequently, in November, 1868, she was appointed guardian of their persons and estates, being appointed for Edward on his application and

for Ellen on her own, and, for anything that appears, without notice to Ellen. In January, 1869, she petitioned the Court of Probate for leave to mortgage the real estate of her wards to raise money to repay McEvey his advances. The petition was dismissed by the court for want of jurisdiction. · In January, 1870, she petitioned the General Assembly, as guardian of her children, for authority to mortgage the estate for the same purpose, and the General Assembly thereupon passed a resolution authorizing the Court of Probate to grant her leave to execute the mortgage for such an amount as the court should determine to be necessary to defray the expenses incurred and debts contracted by her in the erection of the house on such terms and conditions as the court should prescribe. In April, 1870, under leave of the Court of Probate, she executed a mortgage, as guardian, of the three lots aforesaid to the Mechanics' Savings Bank to secure a loan of $3,200 for one year with interest at seven per cent. payable semiannually in advance. In all the proceedings, in the Court of Probate, in the General Assembly, and in the execution of the mortgage, she acted under the name of Ellen Burke, without any intimation that she had been married and no longer bore that name. She is, however, an illiterate woman and may not have known that her former name was being used. The mortgage to the bank contained a power of sale in the customary form, under which, in December, 1877, the bank sold and conveyed the mortgaged estate for $2,500 to the defendant, Jonathan G. Parkhurst, who subsequently commenced an action of trespass and ejectment to recover possession thereof against one of the complainants, Jeremiah Sullivan, who occupies in the right of his wife, Ellen Sullivan, formerly Ellen Burke. Thereupon the said Edward and the said Ellen with her husband, having come of age, brought this bill of complaint to have the said Parkhurst enjoined from the further prosecution of his action and to have the cloud on the title on their real estate, created by the mortgage and the sale and conveyance under it, removed.

It will be seen at a glance that the case bristles with questions of law. Among them the primary and most important question is, whether the resolution authorizing the mortgage is not unconstitutional for the reason that it is calculated to have the effect of depriving the complainants of their property in the three lots

without due process of law.   In considering this question, it will be well to keep in full relief the fact that the house, to pay for which the mortgage was given, had been built before the resolution was adopted and before even the mother of the complainants had received her appointment as guardian.   The moment it was built the house became the property of the complainants. Now, inasmuch as the complainants had no power to contract, being infants, and their mother, at least before her appointment, could not contract for them, it follows that the erection of the house, though it became theirs as soon as built, created no obligation which was enforcible against them or their estates, either at law or in equity, and consequently that the mortgage to pay for the house was a mortgage of their property without their consent to pay for something which already belonged to them. It was a transfer of their property, by special legislation and without compensation, to other persons.   Such a transfer is unconstitutional, because effected without due process of law.

The resolution may be thought to resemble certain statutes, known as Betterment Laws, which have been declared to be constitutional.   Under these laws a person who occupies and improves an estate, supposing it to be his own, acquires a lien on it for the value of the improvements, which he can assert against the owner if the owner reclaims it.   We see no objection to such a law, prospectively applied.   It merely applies, in a mitigated form, the principle which lies at the basis of statutes of possession or statutes of limitation.   Judge Cooley, in his work on Constitutional Limitations, expresses the opinion that such a law may be retrospectively applied, because the reason for the law is, that it is wrong to let the owner of the land recover the land, with the improvement without paying for the improvement; and this reason holds as well for an improvement made before as for one made after the law goes into effect.   We cannot assent to the reasoning.   Morally it may be as wrong for the owner of the land to become the owner of the improvement before as after the law; but before the law it is legally his right to become its owner, and therefore to make him pay for it by retrospective legislation is to make him pay another for his own property, and thus in effect to deprive him of his own property " without due process of law."   And this seems to be the view which was taken

by Judge Story in *Society, &c.* v. *Wheeler*, 2 Gall. 105, though that case was decided under a Constitution which prohibits retrospective legislation.

But a betterment law, even if retrospectively applied, differs favorably from the resolution. It applies only in favor of *bonâ fide* occupants against owners out of possession suing to recover it. It does not dispossess the owner for the benefit of a person who has never had even a possessory right. Moreover, under such a law the owner gets his estate back by simply paying the value of the improvement, not its cost. He is not bettered clean out of his estate, as these complainants are if the mortgage is upheld; for, under the mortgage, the complainants could not keep their land without paying the *cost* of the improvement, which at the time of the mortgage sale considerably exceeded the *value* of the land and the improvement, both together.

It may be thought that the resolution is sustainable because it does not proceed directly to its result. It does not directly create the mortgage; it does not even directly authorize the guardian to make it; it authorizes the Court of Probate to grant the guardian leave to make it after determining for how much and on what terms it shall be given. But in our opinion this circuity of proceeding, however much it may disguise, does not alter the nature of the transaction. The question, in cases of this kind, is not whether the method by which the owner of property is deprived of it is direct or circuitous, but whether it is " due process of law," which means, it has been said, " due course of legal proceedings, according to the rules and forms which have been established for the protection of private rights. *Westervelt* v. *Gregg*, 12 N. Y. 202, 209. The reference to the Court of Probate was not for the purpose of having the court determine whether the mortgage could legally be given, but simply to determine the amount of the claim and to prescribe the terms and conditions of the mortgage. The court acted in the matter, not as a judicial tribunal, but for the General Assembly, just as a committee might have acted. The mortgage, therefore, is as purely a legislative act as if the intervention of the court had never been required.

The case at bar, we may further remark, is not a case in which a power to act had been defectively executed. It has been de-

cided that, in such a case, a retroactive statute to remedy the defect is constitutional. In the case at bar no power, either to make a mortgage or even to contract for the improvement, had ever existed before the adoption of the resolution.

Perhaps it may be supposed that the resolution is constitutional because the complainants were infants when it was adopted. Undoubtedly the legislatures of the several States are in the habit of doing many things for infants which they refrain from doing for adults ; but this is simply because infants have not the same ability as adults to do them for themselves. We do not understand that the great constitutional safeguards of life, liberty, and property are any less effectual for the protection of infants than of adults. An infant's property is as sacredly secured from arbitrary alienation by the legislature as an adult's ; and if the legislature sometimes interferes with it, it does so, unless it exceeds its proper province, merely as *parens patriæ*, for the benefit of the infant and to do for him what it may be presumed he would do for himself but for his incapacity. *Cochran* v. *Van Surlay*, 20 Wend. 365, 373. Now let us apply this principle to the case at bar. The mortgage was executed to raise money to pay for a house which had been built before the resolution authorizing the mortgage was adopted, and before even the woman who under the resolution executed the mortgage, in her capacity as guardian, had received her appointment as such. Under the law of the State the house, as soon as built, became a part of the realty and belonged to the owners of it. It was not only their property, as absolutely as the land itself, but it was their property discharged from any legal obligation to pay for it. This being so, can it be said that the legislature was acting for their benefit, or doing only what it may be presumed they would do for themselves, if capable, when it authorized the mortgage ? How did the mortgage benefit them ? It paid no debt, for they owed none. At most they were only under a moral obligation to pay for the house ; and a legislature cannot convert such an obligation into a debt. *Inhabitants of Medford* v. *Learned*, 16 Mass. 215. Or, again, on what ground can it be presumed that what the legislature did they would have done if capable ? The only ground for such a presumption is that, as a matter of conscience, it would have been the right thing for them to do. But

of course the legislature could not justify its action on any such ground. It would be bound to presume that they would be willing to accept whatever the law, which is the formulated conscience of the State, would allow them.

We therefore decide that the resolution was unconstitutional, and that the mortgage under it was void, and·that the complainants are entitled to have the action at law perpetually enjoined and the cloud created on their title by the mortgage and the sale and conveyance under it removed by deed from the defendant, Parkhurst, releasing all his right, title, and interest in the three lots, except so much of his right, title, and interest therein, if any such there be, as may have accrued to him, as grantee of the mother's right of dower.　　　　　　　　*Decree accordingly.*

*Charles E. Gorman & J. C. B. Woods*, for complainants.

*Stephen A. Cooke, Jr.*, for respondents.